# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN ALEXI GARCIA AVILA, | Case No. 1:26-cv-00631-JLT-EPG-HC |
| Petitioners, | FINDINGS AND RECOMMENDATION TO DENY RESPONDENTS' MOTION TO |
| v. | DISMISS, GRANT PETITION FOR WRIT OF HABEAS CORPUS, AND DIRECT |
| WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al., | RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER |
| Respondents. | (ECF Nos. 1, 14) |

Petitioner is an immigration detainee proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons stated herein, the undersigned recommends denying Respondents' motion to dismiss, granting the petition for writ of habeas corpus, and ordering Petitioner's immediate release.

### I.

### BACKGROUND

Petitioner is a citizen of Honduras who entered the United States on or about June 19, 2021. Petitioner was placed in immigration proceedings under section 240 of the Immigration and Nationality Act ("INA"). (ECF No. 14-1.) The petition alleges that Petitioner was arrested on October 21, 2025 in San Francisco at an Intensive Supervision Appearance Program ("ISAP") appointment and has not seen a judge or had a court hearing. (ECF No. 1 at 5–6.[1])

---

[1] Page numbers refer to the ECF pagination stamped at the top of the page.

On January 26, 2026, Petitioner filed a petition for writ of habeas corpus, raising a prolonged detention due process claim. (ECF No. 1 at 6–17.) The Court also construed the petition "as raising a due process claim regarding Petitioner's re-detention" and ordered Respondents to file a response to the petition, "including the construed due process claim regarding Petitioner's re-detention." (ECF No. 8 at 1, 2.) On February 19, 2026, Respondents filed a motion to dismiss, arguing that the petition "should be dismissed because Petitioner hasn't proven that his detention has become prolonged such that he merits the requested relief." (ECF No. 14 at 1.) The motion to dismiss fails to address the construed due process claim regarding Petitioner's re-detention.

## II.

## DISCUSSION

Although the deadline for Petitioner to file an opposition to Respondents' motion to dismiss has not yet passed, the undersigned finds that issuance of the findings and recommendation is appropriate.

### A.  Procedural Due Process

"We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (internal citations omitted).

#### 1.  Liberty Interest

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas at 690. In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court addressed whether due process requires a parolee be afforded some opportunity to be heard prior to revocation of parole. 408 U.S. at 472. In examining "the nature of the interest of the parolee in

his continued liberty," the Supreme Court stated:

> The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. . . . The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.

Morrissey, 408 U.S. at 482. The Supreme Court found "that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others" and held that "the liberty is valuable and must be seen as within the protection of" due process. Morrissey, 408 U.S. at 482.

Relying on Morrissey, courts in this district have consistently held that noncitizens who have been released from immigration custody pending civil removal proceedings have a protected liberty interest in remaining out of immigration custody. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); J.A.E.M. v. Wofford, No. 1:25-cv-01380-KES-HBK (HC), 2025 WL 3013377, at *3–6 (E.D. Cal. Oct. 27, 2025); J.C.L.A. v. Wofford, No. 1:25-cv-01310-KES-EPG (HC), 2025 WL 2959250, at *3–5 (E.D. Cal. Oct. 17, 2025); Qazi v. Albarran, No. 2:25-cv-02791-TLN-CSK, 2025 WL 3033713, at *4 (E.D. Cal. Oct. 10, 2025); Martinez Hernandez v. Andrews, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at *10 (E.D. Cal. Aug. 28, 2025); Yang v. Kaiser, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *8 (E.D. Cal. Aug. 20, 2025); Maklad v. Murray, No. 1:25-cv-00946 JLT SAB, 2025 WL 2299376, at *7–8 (E.D. Cal. Aug. 8, 2025).

"Even assuming Respondents are correct that § 1225(b) is the applicable detention authority for all 'applicants for admission,' Respondents fail to contend with the liberty interest created by the fact that the Petitioner in this case was released on recognizance[.]" Garcia v. Chestnut, No. 1:25-cv-01907-JLT-CDB, 2025 WL 3771348, at *9 (E.D. Cal. Dec. 31, 2025). Accordingly, the undersigned recommends finding that Petitioner has a protected liberty interest

3

in remaining out of immigration custody.

    2.   *Mathews* Test

In <u>Mathews</u>, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

<u>Mathews</u>, 424 U.S. at 334.

With respect to the first factor, the Court finds that the private interest at issue is fundamental. The Ninth Circuit has recognized that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" <u>Hernandez v. Sessions</u>, 872 F.3d 976, 993 (9th Cir. 2017) (quoting <u>Foucha v. Louisiana</u>, 504 U.S. 71, 80 (1992)).

With respect to the second factor, "'the risk of an erroneous deprivation [of liberty] is high' where, as here, '[the petitioner] has not received any bond or custody redetermination hearing.'" <u>J.A.E.M.</u>, 2025 WL 3013377, at *7 (alterations in original) (quoting <u>A.E. v. Andrews</u>, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 871334, at *5 (E.D. Cal. Mar. 19, 2025)). "Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." <u>Omer G. G. v. Kaiser</u>, No. 1:25-cv-01471-KES-SAB (HC), 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) (alteration in original) (quoting <u>Zadvydas</u>, 533 U.S. at 690). Petitioner's release on recognizance necessarily required a determination that he posed neither a flight risk nor a danger. <u>Rocha Chavarria v. Chestnut</u>, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606, at *4 (E.D. Cal. Dec. 9, 2025) (citing 8 C.F.R. § 212.5(b); <u>Noori v. Larose</u>, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *3 (S.D. Cal. Oct. 1, 2025)); <u>Saravia v. Sessions</u>, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("The federal government sometimes releases noncitizens on bond or parole while their removal proceedings are pending. Release reflects a determination by the government that the noncitizen

is not a danger to the community or a flight risk."), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018). Respondents do not argue that Petitioner is now a flight risk or a danger to the community. "[A]s there have been no procedural safeguards to determine if petitioner's re-detention is justified, 'the probable value of additional procedural safeguards, i.e., a bond hearing, is high.'" Sharan S. v. Chestnut, No. 1:25-cv-01427-KES-SKO (HC), 2025 WL 3167826, at *10 (E.D. Cal. Nov. 12, 2025) (quoting A.E., 2025 WL 1424382, at *5).

With respect to the third and final factor, "although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is 'low.'" J.A.E.M., 2025 WL 3013377, at *7 (citing Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe, 787 F. Supp. 3d at 1094). See Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low."). Courts generally have found that the cost of providing a custody hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a pre-deprivation hearing would be fiscally or administratively burdensome. See J.A.E.M., 2025 WL 3013377, at *7 ("In immigration court, custody hearings are routine and impose a 'minimal' cost." (citing Doe, 787 F. Supp. 3d at 1094)).

On balance, the Mathews factors show that Petitioner is entitled to notice and a bond hearing and "[t]hat hearing should have occurred before petitioner was re-detained." Carmen G.C. v. Robbins, No. 1:25-cv-01648-KES-HBK (HC), 2025 WL 3521304, at *7 (E.D. Cal. Dec. 8, 2025).

> "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty ...."). Courts typically require evidence of urgent concerns or an especially strong government interest to

justify a post-deprivation hearing. *See Guillermo M. R.*, 2025 WL 1983677, at \*9; *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)).

Carmen G.C., 2025 WL 3521304, at \*7.

At such a pre-deprivation hearing, the government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk such that re-detention is warranted. See Carmen G.C., 2025 WL 3521304, at \*7 ("On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing where the government must prove that she is a flight risk or danger to the community by clear and convincing evidence."); J.E.H.G. v. Chestnut, No. 1:25-cv-01673-JLT SKO, 2025 WL 3523108, at \*14 (E.D. Cal. Dec. 9, 2025) ("[T]he immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention.").

Based on the foregoing, Petitioner has demonstrated that he has a strong liberty interest in remaining out of custody, that the risk of erroneous deprivation will be meaningfully reduced by requiring notice and a pre-detention hearing before a neutral decisionmaker, and that the governmental burden in providing such procedure is quite minimal. Accordingly, the undersigned recommends granting the petition on the construed due process claim regarding Petitioner's re-detention.[2]

**B. Appropriate Relief**

Courts in this district have taken differing approaches to the relief granted to petitioners who have been released, subsequently re-detained, and denied bond hearings in violation of due process. In some cases, the immediate release of the petitioner has been ordered. See, e.g., Yurani Hortua v. Chestnut, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9,

---

[2] In light of this conclusion, the Court declines to address Petitioner's prolonged detention claim.

2025) (ordering immediate release of petitioner who had been released from immigration detention on parole, was arrested for theft but the case was resolved with community service and did not result in a conviction, and was re-detained at a routine six-month check-in); Carmen G.C., 2025 WL 3521304 (ordering immediate release of petitioner who allegedly violated reporting requirements four times); Rocha Chavarria, 2025 WL 3533606 (ordering immediate release of petitioner who allegedly "incurred compliance violations" that were not identified and where respondents did not suggest the alleged violations were the reason for petitioner's re-detention).

In other cases, bond hearings have been ordered rather than immediate release. See, e.g., J.E.H.G., 2025 WL 3523108 (ordering bond hearing for petitioner who allegedly violated reporting requirements numerous times and was re-detained based on said violations); Paz Aguilera v. Albarran, No. 1:25-cv-01619 JLT SAB, 2025 WL 3485016 (E.D. Cal. Dec. 4, 2025) (ordering bond hearing for petitioner who allegedly violated reporting requirements one time and was re-detained based on said violation); Sharan S., 2025 WL 3167826 (ordering bond hearing for petitioner who allegedly violated reporting requirements eight times).

Here, Respondents do not allege, and there is nothing in the record before this Court, that Petitioner violated his conditions of release. Respondents do not contend that Petitioner is a danger or flight risk. Accordingly, the Court finds that Petitioner's immediate release is the appropriate remedy.

## III.

## RECOMMENDATION

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. Respondents' motion to dismiss (ECF No. 14) be DENIED.

2. The petition for writ of habeas corpus (ECF No. 1) be GRANTED on the construed due process claim challenging Petitioner's re-detention.

3. Respondents be directed to immediately release Petitioner from custody with the same conditions he was subject to immediately prior to his re-detention on October 21, 2025.

4. Respondents be enjoined and restrained from re-detaining Petitioner unless they

demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 27, 2026**                   /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE